```
            UNITED STATES DISTRICT COURT
              DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| THEODORE DEERY, | |
| Plaintiff, | HONORABLE JOSEPH E. IRENAS |
| | CIVIL ACTION NO. 05-1353 |
| v. | |
| | **OPINION** |
| PORT AUTHORITY TRANSIT CORPORATION, | |
| Defendant. | |

**APPEARANCES:**

DION & GOLDBERGER, ESQS.
By:  Samuel A. Dion, Esq.
1616 Walnut Street, Suite 2316
Philadelphia, PA 19103
        Counsel for Plaintiff

BROWN & CONNERY, LLP
By:  Susan M. Leming, Esq.
     William M. Tambussi, Esq.
     Diane S. Kane, Esq.
360 Haddon Avenue
Westmont, NJ 08108
        Counsel for Defendant

**IRENAS**, Senior District Judge:

   Plaintiff Theodore Deery ("Deery") claims that his former employer, Defendant Port Authority Transit Corporation ("PATCO") violated the Family Medical Leave Act ("FMLA") by refusing to allow Deery to return to work after taking approved leave and then firing Deery, allegedly in retaliation for taking leave. PATCO moves for summary judgment. For the following reasons summary judgment will be granted.

I.

Deery was employed by PATCO as a Way and Power Maintainer,[1] under the supervision of Bill Shaw ("Shaw"). According to Deery, Shaw "was a highly abrasive person who would harass and abuse all of his subordinates." (Pls. Br. at 5) Deery claims it was Shaw's "relentless harassment" over two and a half years which caused Deery to become "mentally unstable" to the point where Deery required "stress leave pursuant to the FMLA." (Id.)

The stress Deery reports culminated in a series of telephone conversations that Deery had with Shaw on July 22, 2003. According to Deery, Shaw questioned Derry about recording 2 hours and 30 minutes of overtime when Derry was only entitled to 2 hours and 29 minutes of overtime. (Def. Ex. B Deery Dep. at 31-32) Deery got "upset" saying to Shaw, "this is a bunch of f'ing shit . . . I am going home sick." (Id.)

Shortly after this incident, Deery was evaluated by Dr. Hershenberg, Ph.D., who observed that Deery's "job stress" mainly arose out of his "deteriorating relationship with his supervisor, Bill Shaw." (Defs. Ex. C) Notably, Dr. Hershenberg observed, "[w]hile [Deery] has expressed thoughts of violence, I believe these threats are verbalizations that do not require legal intervention." (Id.) Dr. Hershenberg diagnosed Deery with

---

[1] Before Deery was promoted to Way and Power Maintainer, he was an Electrician for PATCO. As Way and Power Maintainer, Deery's responsibilities included performing maintenance and construction on electrical facilities.

"Adjustment Disorder with Mixed Emotional Features secondary to work related stress" and determined that his current functioning was sufficiently impaired to warrant 30 days of disability leave. (Id.)

On July 29, 2003, Deery reported to PATCO's Human Resources Department to pick up the requisite leave paperwork. He spoke with Denise Andrews, telling her, "I cannot work for this man [Shaw] anymore. He is just too much for anybody. . . . he drives you so damn crazy sometimes . . . you feel like you can just kill him."[2] (Def. Ex. B, Deery Dep. at 42-44) Andrews, concerned about Deery's comment, immediately contacted her director, Kelly Campbell. (Def. Exs. D and 1) Andrews and Campbell met with the General Manager, Robert Box that same day to report the incident. (Id.) Later that evening Box met with Ron Binder, apparently Shaw's supervisor, to talk about Deery's complaints. (Def. Ex. 1)

At PATCO's request, Dr. Walden Holl, Jr. , M.D., evaluated Deery on August 28, 2003. Dr. Holl reported to PATCO that, "Deery is suffering from a mild mood disorder. At present his mood is slightly elevated and he is exhibiting pressure of speech and irritability. . . . Deery is able to work, however, given his emotional state, it would be best if he would work for someone

---

[2] Deery denies that what he said constituted a threat, but admits the substance of his remarks.

3

other than Mr. William Shaw." (Def. Ex. G)

Similarly, in a report to PATCO dated September 8, 2003, Dr. Hershenberg stated,

> At the present time, Mr. Derry's level of functioning is high enough for him to return to work and to handle his responsibilities as an Electrician. . . . [however] I do not believe that he is capable of returning to the same situation that he was previously in.  My concern is that if he returns to work under Mr. Shaw's direct supervision he will once again show deterioration in his level of functioning.  The deterioration that I described in my previous evaluation was serious and I placed Mr. Deery on Disability because I was concerned about his instability and possible work place violence.

(Def. Ex. H)

After receiving Dr. Holl's report, PATCO wrote to Dr. Holl asking him, "please advise whether we are correct in our understanding that it is your expert medical opinion that there was nothing in your examination of Mr. Deery or the documents we sent to you to review that would lead you to believe that Mr. Deery could pose a threat to his supervisors, co-workers or the general public that he serves if he should resume his duties at PATCO under the current management structure." (Def. Ex. I)  Dr. Holl responded by telephone, stating, "there was no way I [can] determine whether or not Mr. Deery could pose a threat in his work situation." (Id.)

On October 22, 2003, PATCO sent Deery a "notice of pre-

4

disciplinary hearing."[3]  (Def. Ex. K)  The letter briefly recounted the factual allegations against Deery, which included both the telephone conversation with Shaw about overtime and Deery's statements to Denise Andrews in the Human Resources Department.  (Id.)  The letter cited PATCO's "Zero-Tolerance Policy for Harassment, Violence or Threats of Violence" which prohibits

> all verbal or physical threats or acts of violence against people or property occurring on Enterprise premises . . . [and] any threats or acts of violence, bodily harm, or physical, written or verbal intimidation and/or coercion by Enterprise employees which either create a reasonable perception that there may be an intent to harm persons or property . . . which create an intimidating, hostile, or offensive working environment.

(Def. Ex. K)

Deery attended the pre-disciplinary hearing on October 27, 2003.  The next day PATCO informed Deery of its decision to terminate him but offered him the option of retiring.  Deery refused to retire.  Deery was formally advised of his termination by letter dated November 20, 2003.  The letter stated that Deery was formally reprimanded for his use of profanity during the

---

[3] Although Deery had not returned to work, the record is not clear whether Deery was still on approved leave at this time.  Deery asserts that his leave ended on August 28, 2003, when Dr. Holl reported to PATCO that Deery could return to work.  However, Deery did not receive a letter from PATCO confirming he had been approved for FMLA leave until October 16, 2003, and that letter was not clear as to the amount of leave Deery would receive. (Def. Ex. J)

telephone conversation with Shaw and that Deery was terminated for what PATCO determined to be a "verbal threat of violence" against Shaw.[4]  (Def. Ex. L)  The letter continued,

> even if PATCO was not faced with terminating your employment for the above disciplinary reasons, PATCO would still be forced to terminate based on the medical opinions expressed by both your doctor and ours.  Doctors Hershenberg and Holl are in agreement that you should not return to work under your current supervisor, but you are otherwise capable of returning to full duty.  PATCO therefore cannot allow you to return to work for Mr. Shaw.  PATCO has no legal, contractual or other obligation to provide you with a different supervisor.  The necessary result of these circumstances is termination of your employment.

(Id.)

Deery asserts that PATCO denied him his right to reinstatement under the FMLA and wrongfully terminated him in violation of the FMLA.

**II.**

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P.

---

[4] The letter acknowledged Deery's statement at the hearing that he "did not intend a serious threat against Mr. Shaw."  (Def. Ex. L)

6

56(c)).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*).  "The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322; Fed. R. Civ. P. 56(e) (A party opposing summary judgment cannot rest upon the "mere allegations or denials of the adverse party's pleading" but must respond with affidavits or

7

depositions setting forth "specific facts showing that there is a genuine issue for trial.").

### III.

The FMLA was intended "to balance the demands of the workplace with the needs of families . . . by establishing a minimum labor standard for leave" that lets employees "take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse or parent who has a serious health condition." *Parker v. Hahnemann University Hospital*, 234 F. Supp. 2d 478, 483 (D.N.J. 2002). Under the FMLA "an eligible employee shall be entitled to a total of twelve workweeks of leave during any twelve month period" if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

To present a claim under the FMLA, the employee must demonstrate that: (1) he is an eligible employee under the FMLA; (2) the defendant is an employer subject to the requirements of the FMLA; (3) he gave notice to his employer of his intent to take FMLA leave; and (4) his employer violated his rights under the FMLA.[5] *Parker*, 234 F. Supp. 2d at 483-84. With respect to the last prong, courts have recognized that an employee may seek

---

[5] Only the last prong is at issue in this case.

recovery for a violation of FMLA rights under two distinct theories: the entitlement or interference theory and the retaliation theory.  *See Parker*, 234 F. Supp. 2d at 485; *Marrero v. Camden County Bd. of Soc. Servs.*, 164 F. Supp. 2d 455, 463 (D.N.J. 2001).  Deery's claim is based upon both theories.  The Court will address each in turn.

### A.

The FMLA makes it unlawful for an employer to "interfere with, restrain or deny the exercise of or the attempt to exercise" any right provided by the FMLA.  29 U.S.C. § 2615(a)(1).  To succeed on an entitlement claim, the employee needs only to show that he was entitled to benefits under the FMLA and his employer denied him those benefits.  *Parker*, 234 F. Supp. 2d at 485; *Marrero*, 164 F. Supp. 2d at 464-66.  FMLA benefits include the right to reinstatement after returning from medical leave.  *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 141 (3d Cir. 2004) ("After an eligible employee returns from an FMLA leave, the employee is entitled to be reinstated to his or her former position, or an equivalent one.")(citing 29 U.S.C. § 2614(a)(1)).

The issue in this case is whether the right to reinstatement under the FMLA includes the right to reasonable accommodations

9

which would allow an employee to return to work.  Deery argues that he "was able to perform all the essential functions of his job with one very minor accommodation, i.e. assignment to a different supervisor.  Mr. Deery has the right [under the FMLA] to request an accommodation to be restored to a different shift, schedule or position which better suits the employee's personal needs upon return from leave."  (Pl. Br. at 3)  However, Third Circuit precedent directly contradicts Deery's position.  "The FMLA does not require an employer to provide a reasonable accommodation to an employee to facilitate his return to the same or equivalent position at the conclusion of his medical leave." *Rinehimer v. Cemcolift, Inc.,* 292 F.3d 375, 384 (3d Cir. 2002) (citing 29 C.F.R. § 825.214(b)).[6]

Thus, as a matter of law, PATCO did not violate Deery's FMLA rights by refusing to allow him to return to work under a

---

[6] "If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA."  29 C.F.R. § 825.214(b).  *See also Tardie v. Rehabilitation Hosp. of R.I.,* 168 F.3d 538, 544 (1st Cir. 1999) ("Unlike the ADA, [29 C.F.R. § 825.214(b)] omits the qualifying 'with or without reasonable accommodation' language.  The regulation goes on to state that the employer may have obligations under the ADA, but this reminder does not import the 'reasonable accommodation' qualifier into the FMLA context."); *Fogelman v. Greater Hazleton Health Alliance*, 122 F.A'ppx 581, 587 (3d Cir. 2004) ("In light of [29 C.F.R. § 825.214(b)] we have said that the FMLA does not require 'an employer to provide reasonable accommodation to an employee to facilitate his return to the same or equivalent position at the conclusion of his medical leave.'") (quoting *Rinehimer*); *Conroy v. Tonwship of Lower Merion*, 77 F.App'x 556, 559 (3d Cir. 2003) ("*Rinehimer* holds that the FMLA does not require an employer to provide a reasonable accommodation to an employee to facilitate his return to the same or equivalent position at the conclusion of his medical leave.").

different supervisor.[7]  Accordingly, summary judgment is warranted on the FMLA entitlement claim.

**B.**

The FMLA also provides for recovery based upon an employer's retaliatory or discriminatory actions in response to an employee's exercise of rights provided by the FMLA.  *See* 29 U.S.C. § 2615(a)(2); *Conoshenti*, 364 F.3d at 146-47; *Parker*, 234 F. Supp. 2d at 487-88; *Marrero*, 164 F. Supp. 2d at 463.  The Department of Labor regulations provide that "[a]n employer is prohibited from discriminating against employees who have used FMLA leave.  For example . . . employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions."  29 C.F.R. § 825.220(c).

To establish a prima facie retaliation claim, a plaintiff

---

[7]  Further, even if PATCO were required to make reasonable accommodations, the Court questions whether assigning Deery to a different supervisor would be reasonable.  *See Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 581 (3d Cir. 1998) (holding that transferring plaintiff away from co-worker or supervisor who caused him stress was not required by the ADA; "by asking to be transferred away from individuals who cause him prolonged and inordinate stress, [the plaintiff] is essentially asking this court to establish the conditions of his employment, most notably, with whom he will work."); *Weiler v. Household Finance Corp.*, 101 F.3d 519, 526 (7th Cir. 1996) (failure to assign employee to work under different supervisor did not violate reasonable accommodation requirement of ADA); *Wernick v. Federal Reserve Bank of New York*, 91 F.3d 379, 384 (2d Cir. 1996)(same).

Were it proven that PATCO tolerated the alleged abusive behavior by Shaw, such conduct would be worthy of condemnation.  However, the FMLA is not a statute that generally regulates workplace conduct.  Moreover, nothing in the record suggests that Deery's termination directly resulted from Deery's exercise of his FMLA rights.

11

must demonstrate that: (1) he took an FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave. *Lepore v. LanVision Sys.*, 113 F.App'x 449, 453 (3d Cir. 2004) (citing *Conoshenti*, 364 F.3d at 146); *see also Parker*, 234 F. Supp. 2d at 492 ("plaintiff must first establish a prima facie case of discrimination by showing (1) that she took advantage of the protected right to leave under the FMLA, (2) that she was adversely affected by an employment action taken by defendants, and (3) the unfavorable employment action was caused by her choice to take leave under the FMLA."). Once the employee makes out a prima facie case, the usual *McDonnell Douglas* burden shifting framework is implicated:  the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the employee's termination.  If the employer meets this burden, the plaintiff must then prove that the defendant's reason was pretextual.  *Id.*

Deery has satisfied prongs one and two of his prima facie case because the undisputed record demonstrates that he took FMLA leave and he was terminated.  For purposes of summary judgment only, the Court will assume *arguendo* that the temporal proximity between Deery's termination and his medical leave is sufficient to establish prong three of Deery's prima facie case of retaliation.  *See Parker,* 234 F. Supp. 2d at 492 (temporal proximity that is unduly suggestive satisfies the causation

12

element of a plaintiff's prima facie case at the summary judgment stage). Thus, the Court turns to PATCO's proffered reason for Deery's termination and Deery's assertions that the reason was pretextual.

Deery does not dispute that PATCO has put forth sufficient evidence of a legitimate, non-discriminatory reason for Deery's termination: violation of the company's "Zero-Tolerance Policy for Harassment, Violence or Threats of Violence." A reasonable trier of fact could believe that after holding a disciplinary hearing, PATCO determined that Deery had violated the policy, which constitutes grounds for termination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)(to establish a non-discriminatory reason for an adverse employment action, the defendant must set forth reasons that, if believed by the trier of fact, "would support a finding that unlawful discrimination was not the cause of the employment action.").

Lastly, to withstand summary judgment, Deery must establish that PATCO's "proffered reason was not the true reason for the employment decision," and was a pretext for unlawful discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). In *Fuentes v. Perskie*, the Third Circuit explained that

> the plaintiff cannot simply show that the employer's
> decision was wrong or mistaken, since the factual
> dispute at issue is whether discriminatory animus
> motivated the employer, not whether the employer is

13

> wise shrewd, prudent, or competent.  Rather the . . .
> plaintiff must demonstrate such weakness,
> implausibilities, inconsistencies, incoherencies, or
> contradictions in the employer's proffered legitimate
> reasons for its action that a reasonable factfinder
> could rationally find them unworthy of credence.

32 F.3d 759, 765 (3d Cir. 1994) (internal citations omitted).

Deery makes two arguments with regard to pretext.[8]  First, he asserts that PATCO's delay in investigating the alleged threat against Shaw demonstrates pretext because such a delay violated PATCO's own policy to promptly investigate violations of the Zero-Tolerance for Violence policy.  The Court disagrees that such evidence can support an inference of pretext, mainly because Deery's assertions are refuted by the record.  The undisputed documentary evidence demonstrates that PATCO's General Manager, Robert Box, met with Andrews and her supervisor about Deery's comments the same day Derry made them.  Shortly thereafter, Andrews and Box documented the events in memoranda to PATCO's file.  (See Def. Exs. D and 1)  Thus, the undisputed evidence shows that PATCO did promptly investigate the incident.  Moreover, the fact that PATCO waited until October 22, 2003, to hold a hearing on Deery's alleged violations, does not by itself

---

[8]  Deery concludes that "a reasonable fact finder could conclude that animus towards [Deery's] mental disability was more likely than not a motivating factor or determinative cause of PATCO's action."  (Pl. Br. at 23)  This is an incorrect statement of the issue because Deery asserts an FMLA claim, not an ADA claim.  The relevant inquiry is whether Deery's medical leave was a motivating factor in PATCO's termination decision.  Even if PATCO admitted that it terminated Deery because of his mental instability, Deery would not necessarily prevail on his FMLA claim.

14

support an inference of retaliatory motive.  Given that Deery had not returned to work, there was no immediate need to determine whether Deery had in fact threatened Shaw.

Second, Deery asserts that he did not actually threaten Shaw and that no reasonable person would have understood his comments to be a threat.  However, this argument somewhat misses the mark.  While there may be disputed factual issues about whether Deery's comments were actually a "threat" as that term is defined by PATCO's Zero-Tolerance for Violence policy, PATCO's determination after the disciplinary hearing that Deery's statements were a threat was not so plainly wrong to warrant an inference of retaliation.  As noted above, "Plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise shrewd, prudent, or competent."  *Fuentes,* 32 F.3d at 765; *cf. Jones v. Sch. Dist. Of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999) ("a plaintiff may satisfy [the pretext standard] by demonstrating, through admissible evidence, that the employer's articulated reason was not merely wrong, but that it was so plainly wrong that it cannot have been the employer's real reason.").

Deery has not put forth sufficient evidence to support an inference of pretext.  On this record, a reasonable fact finder could not conclude that PATCO's reason for terminating Deery is

15

unworthy of credence.  Accordingly, summary judgment for PATCO is warranted on the FMLA retaliation claim.

**IV.**

Based on the foregoing, PATCO's Motion for Summary Judgment will be granted in its entirety.  The Court will issue an appropriate order.

Date: August   23rd  , 2006

                                  s/*Joseph E. Irenas*
                                  JOSEPH E. IRENAS, S.U.S.D.J.